IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CV-206-FL

| | |
|---|---|
| DAVID T. PERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| PNC BANK, N.A.; KELLY COOKE ) | |
| (CFE); EQUIFAX INFORMATION ) | |
| SERVICES, LLC; EXPERIAN ) | |
| INFORMATION SOLUTIONS, INC., | |
| ) | |
| Defendants. | |

This matter comes before the court on the motion to dismiss by defendants PNC Bank, N.A. ("PNC") and Kelly Cooke ("Cooke"), pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6), for failure to state a claim upon which relief may be granted. (DE 6). Plaintiff timely filed a response, to which defendants PNC and Cooke replied, and plaintiff sur-replied. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the motion is granted.

## STATEMENT OF THE CASE

Plaintiff, proceeding pro se, filed this action on April 13, 2015, in the Superior Court of Wake County, North Carolina. (DE 1-1). On May 12, 2015, defendant PNC, with the consent of defendants Cooke, Equifax Information Services, LLC ("Equifax"), and Experian Information Solutions, Inc. ("Experian"), removed the action to this court, asserting federal question and diversity jurisdiction. Id. Plaintiff asserts ten claims in total, with claims 1, 2, 3, 4, and 10 arising

under the Fair Credit Reporting Act ("FRCA"), 15 U.S.C. § 1681, et seq., and claims 5, 6, 7, 8, and 9 arising under the North Carolina Commercial Code, N.C. Gen. Stat. § 25-1-101, et seq.

Plaintiff contends defendants PNC and Cooke violated the FRCA and North Carolina law when they failed to properly investigate plaintiff's claims that account activity reported to credit reporting agencies was fraudulent prior to causing the activity to appear on credit reports generated by defendant Equifax, defendant Experian, and Transunion, LLC.[1] Plaintiff also contends defendants PNC and Cooke failed to promptly correct the errors with credit reporting agencies after plaintiff met with defendant Cooke in February 2015 and informed defendants PNC and Cooke of the dispute. Plaintiff contends his credit was harmed as a result of defendants' actions, and that he suffered mental anguish and humiliation. Plaintiff seeks $13.5 million in compensatory and punitive damages from all defendants, including $5 million jointly from defendants PNC and Cooke. On May 19, 2015, defendants PNC and Cooke filed the motion to dismiss presently before the court. (DE 6).

## STATEMENT OF THE FACTS

The facts alleged in the complaint may be summarized as follows. On or about January 2012, an unknown individual stole plaintiff's identity and used his personal information to open accounts at PNC Bank. A few months later, in mid to late 2012, these then delinquent accounts began appearing on plaintiff's credit reports, and he began the process of disputing the accuracy of the entries with the consumer credit reporting agencies, including defendants Equifax and Experian. In 2013 or 2014, plaintiff contends he again disputed the information pertaining to the accounts by

---

[1] Transunion, LLC was dismissed voluntarily with prejudice from the action on May 12, 2015. The court amends the caption of this order to so reflect. The court has amended the caption previously to remove "PNC Bank (Lending Investigative Services Group)," as this entity and defendant PNC are one in the same.

contacting defendant PNC directly by phone and mail. In February 2015, plaintiff spoke with defendant Cooke, in her capacity as fraud investigator at PNC, at which time, plaintiff provided defendants PNC and Cooke with a letter he allegedly had received from defendant PNC about a personal credit application containing missing information. Defendant Cooke then provided plaintiff with the documentation she had on file about him, including a personal credit application. Plaintiff informed defendants PNC and Cooke that the signature on the documents was not his, that the documents lacked his social security number, and that they contained an inaccuracy concerning plaintiff's place of employment. In response, defendant Cooke mailed plaintiff a letter, dated February 9, 2015, suggesting plaintiff file a police report if he believed he was the victim of identity theft, and detailing the information required by defendants PNC and Cooke in order to investigate plaintiff's claim. Plaintiff alleges that he filed a police report with the Northampton County Sheriff's Department on March 18, 2015. Plaintiff then initiated this action on April 13, 2015.

### COURT'S DISCUSSION

A.  Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual

3

enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible that he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotations omitted).

Courts must construe pro se complaints liberally, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 105 (1976)). Courts, however, "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp.2d 766, 776 (E.D.N.C. 2011). "The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed." Weller v. Dep't of Soc. Servs. for the City of Baltimore, 901 F.2d 387, 391 (4th Cir. 1990).

B.  Analysis

With regards to the federal claims 1, 2, 3, 4, and 10, defendants raise three arguments in support of their motion to dismiss: 1) some of plaintiff's claims are barred by the FCRA's statute of limitations, found within § 1681p; 2) there is no private cause of action under 15 U.S.C. § 1681s-2(a); and, finally, 3) all claims fail to state a claim upon which relief may be granted.

With respect to plaintiff's state law claims 5, 6, 7, 8, and 9, defendants raise two arguments as to why these claims should be dismissed: 1) the complaint fails to state a claim upon which relief

can be granted, and 2) the North Carolina statutes upon which plaintiff bases his claims do not provide for a private right of action.

   1.   Federal Claims 1, 2, 3, 4, and 10

      a.   Statute of Limitations

Claims arising under the FRCA are governed by a statute of limitations, which states:

"An action to enforce any liability under this subchapter may be brought in any appropriate United States district court...no later than the earlier of–
   (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or
   (2) 5 years after the date on which the violation that is the basis for such liability occurs."

15 U.S.C. § 1681p. Defendant PNC alleges plaintiff's federal claims are barred by this statute.[2] In claims 1, 2, and 4, plaintiff asserts that defendants PNC and Cooke negligently failed to investigate the documentation relating to fraudulent personal credit applications and accounts, in violation of the FRCA, prior to reporting the delinquent accounts to consumer credit reporting agencies. Claims 1, 2, and 4 pertain to defendant PNC's original reporting of information to the consumer credit reporting organizations in 2012, and the court agrees that these claims are barred by the statute of limitations. Plaintiff refers to defendant PNC's failure to "recheck the information that was furnished to them," and "report[ing] inaccurate information about the financial trustworthiness" of plaintiff. (Compl. at 7, 12). The court construes this to refer to defendant PNC's failure to verify the disputed account information, such as the missing social security number, prior to submitting the account to consumer reporting agencies. Plaintiff has pleaded no facts demonstrating that he

---

[2] Plaintiff does not reference any contact with defendant Cooke until February 2015, although he claims Cooke possessed the same duties as PNC to furnish accurate information to credit reporting agencies. Because the court is uncertain what role defendant Cooke played in the initial furnishing of information, if any, the court construes all claims originating prior to February 2015 as not applicable to defendant Cooke. Even assuming defendant Cooke was involved with the 2012 reporting, the claims are barred regardless, as explained herein.

5

raised any dispute over the account activity until a few months after January 2012, when he acknowledges it first appeared on his credit reports. Id. at ¶¶ 1, 3.

Plaintiff had two years from that time to file suit concerning defendant PNC's reporting conduct, and the statute of limitations ran in or about mid-year 2014. Accordingly, plaintiff's claims pertaining to defendant PNC's original report to the credit agencies, claims 1, 2, and 4, must be dismissed with prejudice.

In claims 3 and 10, by contrast, plaintiff asserts that defendants PNC and Cooke failed to correct the reported information once notified of a dispute and failed to follow debt dispute procedures as required by the FRCA. These claims are governed by a separate time limit. There is no reference to defendant Cooke prior to plaintiff's February 2015 interaction with her. Any claims plaintiff asserts originating out of those interactions, therefore, are not barred by the § 1681p statute of limitations, as the date of the alleged violation forming the basis for liability is February 2015. Further, the complaint alleges that plaintiff personally informed defendant PNC of the disputed credit report entries "on or about 2013-2014." (Compl. ¶ 4). Plaintiff argues that he became aware of defendants' violations with respect to debt dispute procedures and credit report correction in February 2015, when his interactions with defendant Cooke began. (Id. ¶ 9). Accordingly, claims 3 and 10 are not time-barred.

        b.      No Private Cause of Action

Defendants PNC and Cooke argue that no private cause of action exists for certain violations asserted by plaintiff.[3] The court has construed plaintiff's claim 10 as grounded in § 1681s-2(a). Claim 10 is entitled, "[Defendants'] failure to correct or delete inaccurate information." (Compl.

---

[3] The court does not reach the other arguments argued by defendants Cooke and PNC with respect to the time-barred claims 1, 2, and 4.

6

at 13) (emphasis omitted). Within this claim, plaintiff pleads facts alleging that defendants PNC and Cooke "refused to remove the erroneous debt from Plaintiff's credit reports." Id. (emphasis omitted). Section 1681s-2(a)(2) explains the duty to correct and update information under the FRCA:

> A person who–
>> (A) regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and
>> (B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate,
>
> shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information...

This duty to notify the consumer reporting agencies of incomplete or inaccurate information, however, only may be enforced by "the Federal agencies and officials and the State officials identified in section § 1681s." See § 1681s-2(d) ("Limitation of enforcement"). As a result, plaintiff's claim 10 must be dismissed with prejudice, because plaintiff, as a private consumer, may not initiate suit under § 1681s-2(a).

   c. Failure to State a Claim

With respect to the remaining federal claim, claim 3, defendants Cooke and PNC argue that plaintiff failed to plead any facts demonstrating that they had a duty to investigate under § 1681s-2(b), because plaintiff has not pleaded that a consumer reporting agency notified defendants of a dispute. Defendants PNC and Cooke further allege that plaintiff failed to plead facts showing defendants PNC and Cooke did not attempt to conduct a reasonable investigation. These defendants argue that plaintiff has not demonstrated how they violated the FRCA in this respect.

In claim 3, plaintiff alleges defendants PNC and Cooke failed to follow debt dispute procedures. The court construes this claim as grounded in § 1681s-2(b). The duties of a furnisher

7

of information under this statute are triggered when notice of a dispute, pursuant to § 1681(i)(a)(2), is received. See 15 U.S.C. § 1681s-2(b)(1). Section 1681i(a)(2) describes how such notice must be provided by the consumer reporting agency:

> (2) Prompt notice of dispute to furnisher of information.--
> (A) In general.--Before the expiration of the 5-business-day period beginning on the date on which a <u>consumer reporting agency receives notice of a dispute from any consumer</u> or a reseller in accordance with paragraph (1), <u>the agency shall provide notification of the dispute to any person who provided any item of information in dispute</u>, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.
>
> (B) Provision of other information.--The consumer reporting agency shall promptly provide to the person who provided the information in dispute all relevant information regarding the dispute that is received by the agency from the consumer or the reseller after the period referred to in subparagraph (A) and before the end of the period referred to in paragraph (1)(A).

(emphasis added). Defendants PNC and Cooke are not the consumer reporting agencies, but rather a furnisher of information and such furnisher's employee, respectively.

Nowhere in the complaint does plaintiff plead facts sufficient to show the consumer reporting agencies provided defendants PNC and Cooke with the notice necessary to trigger the investigative duties under § 1681s-2(b)(1). Plaintiff suggests, however, that he directly notified all defendants of the disputed account activity. (Compl. ¶¶ 3-4). Even assuming this is true, such facts do not trigger the investigative duties of the furnisher. Section 1681s-2(b)(1) differs from §1681s-2(a), by requiring consumer reporting agencies to provide the notice of dispute to the furnisher. Section 1681s-2(a), the provision without rights of private enforcement, alternatively, explicitly allows consumers to notify furnishers that information is inaccurate, and personally trigger the duties to determine whether reported information is inaccurate.

"In interpreting a statute, we must first 'determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" Johnson v. MBNA America Bank, NA, 357 F.3d 426, 430 (4th Cir. 2004) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997)). "[A] furnisher's duty to investigate is not triggered until it receives notification of a dispute from a consumer reporting agency." See Mavilla v. Absolute Collection Service, Inc., 539 Fed. App'x. 202, 208 (4th Cir. 2013), Johnson, 357 F.3d at 431 ("We therefore hold that § 1681s-2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their records to determine whether the dispute information can be verified.") (emphasis added), but see White v. Green Tree Servicing, LLC, ___ F. Supp.3d___, 2015 WL 4647944 at *5-6 (D.Md. Aug. 4, 2015) (holding that pleading notice is not required to survive a motion to dismiss; plaintiff alleging facts indicating that she had informed consumer reporting agencies of the dispute was sufficient). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Johnson, 357 F.3d at 430.

Looking at § 1681s-2(b) in context, the statute plainly requires a consumer reporting agency to give notice to furnishers in order to trigger dispute investigation in contrast to § 1681s-2(a). In failing to plead this element, plaintiff fails to state a claim upon which relief may be granted.

Further, even if plaintiff's allegations concerning his contact with all defendants could be considered sufficient to survive a motion to dismiss, plaintiff does not plead facts sufficient to permit a reasonable inference that defendants PNC and Cooke failed in their responsibility to conduct an investigation as required by § 1681s-2(b). Upon receiving notice of dispute, furnishers of information must:

9

(A) conduct an investigation with respect to the disputed information;
(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
(C) report the results of the investigation to the consumer reporting agency; [and]
(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person has furnished the information and that compile and maintain files on consumers on a nationwide bases...

15 U.S.C. § 1681s-2(b). Plaintiff's only reference to the dispute investigation procedures of defendants PNC and Cooke is found in paragraph ten, where plaintiff claims "in compliance with letter dated February 9, 2015 from Kelly Cooke...Plaintiff files police report." (Compl. at 6). Because plaintiff references the letter in his complaint, defendants PNC and Cooke have provided the court with a copy of that letter. (Def. Reply to Pl. Opp. to Mot. to Dismiss, DE 28-2). See, e.g., Phillips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

This letter sent by defendant Cooke to plaintiff, on behalf of defendant PNC, specifies the information Cooke needed from him in order to investigate his dispute. Defendant Cooke requested plaintiff provide an affidavit of forgery including the date plaintiff first knew of potentially forged information, and a copy of plaintiff's social security card, driver's license, proof of residence, and any police report. Plaintiff does not claim to have notified defendants of his alleged compliance, nor whether he otherwise responded to the letter from defendants PNC and Cooke about initiating dispute resolution procedures. There is nothing in the complaint to indicate that defendants PNC and Cooke acted improperly with regards to plaintiff's dispute, other than plaintiff's contention that the investigation did not result in any change to his credit report. Plaintiff pleads only conclusory statements, devoid of the factual enhancement necessary to satisfy his pleading burden under Twombly.

10

Plaintiff claims that he informed defendants that the signatures on documents pertaining to the disputed accounts did not match his signature, that his social security number was missing from the documents, and that the documents contained erroneous information about his employer. He argues that providing this information to defendants implicitly means any investigation not resulting in his favor must be unreasonable. The statute, however, does not provide relief on the basis of an investigation culminating in an unfavorable conclusion, but rather, only on the basis of a failure to perform an investigation, or a failure, post-investigation, to follow up with the consumer credit reporting agencies when fraud is detected. See § 1681s-2(b). Plaintiff has not alleged a failure to follow investigative procedure. Accordingly, plaintiff's remaining § 1681s-2(b) claim, claim 3 as construed by the court, fails to state a claim upon which relief may be granted.

2. State Law Claims 5, 6, 7, 8, and 9

Plaintiff has failed to contest defendants' motion to dismiss with regards to claims 5, 6, 7, 8, and 9, electing to focus his response and sur-reply on claims 1, 2, 3, 4, and 10. To the extent that plaintiff addresses defendants' motion to dismiss regarding the state law claims, plaintiff admits, "[t]he facts contained within the well-pled state law claims 5, 6, 7, 8, and 9 state legal conclusions to which no response is necessary." (Pl. Sur-reply at 1, DE 30). Plaintiff's state law claims are grounded in N.C. Gen. Stat. § 25-3-308; § 25-3-401; § 25-3-403; § 25-3-601; and § 25-3-604.

The court is unable to determine from plaintiff's complaint what facts he alleges demonstrate violations of the North Carolina Commercial Code. Plaintiff bases his claims on Article 3 of the code entitled, "Negotiable Instruments." The court construes plaintiff's argument to amount to an attack on the validity of the credit applications which caused defendant PNC to furnish information the consumer reporting agencies. Turning to the text of Article 3, the court finds this provision of

11

the code to apply only to actions to enforce a negotiable instrument. See § 25-3-118 "Statute of limitations" (all actions listed pertain to enforcing a note, rather than an offensive suit to invalidate the negotiable instrument). Section § 25-3-301, in fact, provides the definition for "Person entitled to enforce instrument," and § 25-3-308 explains which party possesses the burden to prove the authenticity of signatures in "an action with respect to an instrument." The case at bar is not an action to enforce an instrument. Plaintiff has alleged no facts that would allow the court to find he is the type of party given a cause of action under this North Carolina law.

While §§ 25-3-401 and 25-3-403 state that unauthorized signatures are ineffective to bind those who successfully contest the signatures, the statutes describes a defense available in an action to enforce the instrument. They do not provide a cause of action within the text by which the defense becomes a reason to bring suit. Section 25-3-601, a provision concerning discharge of instruments, refers back to the defenses established throughout the article as the basis for discharge of instruments in the event enforcement is sought, but again does not provide a means for plaintiff to preemptively sue to invalidate the instrument.

Further, § 25-3-604 provides the party in defendant PNC's position, the one to whom payment of a credit loan is due, the opportunity to renounce the right to sue on the instrument.[4] Plaintiff may not use this provision as a vessel to renounce the signature upon the instrument. Accordingly the court agrees with defendants PNC and Cooke that Article 3 of the North Carolina Uniform Commercial Code does not provide plaintiff with a cause of action under the facts alleged.

---

[4] On the record, plaintiff has submitted documents indicating that PNC "charged off" the allegedly fraudulent accounts in plaintiff's name for nonpayment. See (Pl. Sur-reply, Ex. 1 at 8-9, DE 30-1). This write off explains how the information came to be on plaintiff's credit report in the first place. Defendant PNC has filed no counterclaim, nor other action to collect the debt, in this court.

12

Therefore, plaintiff's claims originating under Article 3, claims 5, 6, 7, 8, and 9, against defendants Cooke and PNC must be dismissed for failure to state a claim.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss is granted. (DE 6). Plaintiff's federal claim 3 is DISMISSED WITHOUT PREJUDICE for failure to state a claim upon which relief may be granted. Plaintiff's federal claims 1, 2, and 4 are DISMISSED WITH PREJUDICE as time-barred by the applicable statute of limitations. Plaintiff's remaining federal and state claims are DISMISSED WITH PREJUDICE for failure to state a claim upon which relief may be granted. Accordingly, defendants PNC and Cooke are dismissed from the action.

SO ORDERED, this the 7th day of October, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge